H. L. THOMAS AND ROBERT MUIR, Appellants, v. THE EXCHANGE BANK OF ANGUS, *et al.*, and THE CITIZENS' NATIONAL BANK OF DES MOINES, IOWA.

**Drawer of Check:** EQUITABLE ASSIGNMENT. The issuance of a check or draft on a bank operates as an equitable assignment of so much of the drawer's deposit in the bank as is necessary to pay such check or draft, but gives the drawee no greater rights in such fund than the drawer himself had.

SAME: *Defenses against assignee—Statutory construction.* Under Code, 1873, sections 2078, 2546, an action by the assignee of an open account is subject to all defenses, counter-claims, or causes of actions, whether matured or not, if matured when plead, existing in favor of the defendant, and against the assignor, before notice of the assignment; and under these, a bank may set off an unmatured note of a depositor in its favor, in an action against it on a check or draft drawn by such depositor, of which it had no notice until after it learned of the drawer's insolvency.

**Bank Deposit:** *Set off—Insolvency of depositor.* A bank may in equity offset as against an unmatured debt of an insolvent debtor any sum which it may be owing to the debtor, unless the account which it owes has been pledged to some specific purpose, or is impressed with some trust.

*Same.* This right is not affected by the fact that the deposit is in the name of another bank, where it is merely a name which the depositor adopted for the purpose of his business, and represents no interest but his own.

NOTE.—The right of a bank to set off an unmatured claim against a deposit account of an insolvent debtor is the subject of a note to *Nashville Trust Co. v. Fourth National Bank* (Tenn.) 15 L. R. A. 710.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

THURSDAY, OCTOBER 15, 1896.

EACH of the appellants named above commenced actions at law against the appellees to recover the amounts of certain drafts or checks issued to them by the Exchange Bank of Angus, upon the Citizens' National Bank of Des Moines. They asked that one H. L. Thomas, assignee of the Angus Bank, be made a party defendant, which was accordingly done. The defendant Exchange Bank, through A. T. Pearson, the sole owner and proprietor thereof, admitted his indebtedness to the plaintiffs and appellants upon the drafts. The assignee appeared, and filed a disclaimer; and the Citizens' National Bank filed an answer and cross-petition in equity, in which it recited, in substance, that the Exchange Bank, on and prior to August 7, 1893, had on deposit with it the sum of one thousand forty-four dollars. It further pleaded that the Exchange Bank and Pearson, which were one and the same thing, was indebted to it in sum of one thousand dollars on a certain promissory note executed by Pearson as principal, and by one Mosher as surety, due September 28, 1893, no part of which had been paid; that, at the time of the drawing of the drafts or checks upon which appellants found their suits, Pearson and the Exchange Bank were insolvent; and that, by reason of the indebtedness of Pearson and his insolvency, it had the right to, and did, set off the deposit held by it as against the indebtedness upon the note; and that it then refused to pay appellants' checks which were presented after the right of offset existed; and that Mosher, the surety on the Pearson note, demanded that it resort to the deposit standing to the credit of Pearson before resorting to

any remedies as against him; and it asked that a lien be established in its favor upon the deposit, and that it be allowed to use the deposit as an offset to the Pearson note, and that the case be transferred to equity, and for other equitable relief. The appellants, in answer to the cross petition, denied the alleged lien of the Citizens' Bank, and further pleaded that the deposit was made for the special purpose of paying checks or drafts which might be drawn against it, and that it could not be used as an offset against a debt of Pearson not yet matured. They also pleaded that the Pearson note had no connection with the deposit made by the Exchange Bank, and that no lien existed in favor of the Citizens' Bank against the deposit. The cases were, on motion, consolidated, and transferred to the equity docket, and upon a trial to the court, without a jury, were decided in favor of the Citizens' National Bank. The plaintiffs appeal.—*Affirmed.*

*Bishop, Bowen & Fleming* and *Granger & Bennett* for appellants.

The bank had no right to offset or appropriate an account standing in the name of the Exchange Bank of Angus against an individual note of A. T. Pearson, even though A. T. Pearson was the sole owner of the Exchange Bank of Angus, and even though the one thousand dollars, which was borrowed originally on the note, was by Mr. Pearson put into the Exchange Bank of Angus.

*Adams v. First National Bank,* 113 N. C. 332 (23 L. R. A. 111); *International Bank v. Jones,* 119 Ill. 407 (59 Am. Rep. 807); *Coates v. Preston,* 105 Ill. 470; Morse, Bank & Banking, sections 326, 334; *Dawson v. Real Estate Bank,* 5 Ark. 283.

The debt against A. T. Pearson was not due at the time of the drawing and presentation of the drafts,

and the Citizens' Bank had no authority or right to offset an account, or a deposit, against a debt not then due.

*Simmons Hardware Co. v. Bank of Greenwood*, 41 S. C. 177; *Merchants' National Bank v. Robinson*, 97 Ky. 552 (28 L. R. A. 760); *Heidelbach v. National Park Bank*, 87 Hun. 117; *Chipman v. Ninth National Bank*, 120 Pa. 86; *Roberts v. Corbin*, 26 Iowa, 315 (96 Am. Dec. 146).

*Gatch, Connor & Weaver* for appellees.

The Exchange Bank of Angus was but a name under which A. T. Pearson carried on business.

The Citizens' National, in a suit in equity, had a right of set-off between itself and Pearson, as between Pearson's deposit and the note held by the bank which had not yet matured.

*Knapp v. Cowell*, 77 Iowa, 528; *Scott v. Armstrong*, 146 U. S. 499, 512, 36 L. ed. 1059, 1063; *Carr v. Hamilton*, 129 U. S. 252, 32 L. ed. 669; *Schuler v. Israel*, 120 U. S. 506, 30 L. ed. 707; *Louis Snyder's Sons Co. v. Armstrong*, 37 Fed. Rep. 18; *Yardley v. Clothier*, 49 Fed. Rep. 337, 3 U. S. App. 207, 51 Fed. Rep. 506, 17 L. R. A. 462; *North Chicago Rolling Mill Co. v. St. Louis Ore & S. Co.*, 152 U. S. 596, 38 L. ed. 565; *Davis v. Milburn*, 3 Iowa, 163; *Kentucky Flour Co. v. Merchants' National Bank*, 90 Ky. 225, 9 L. R. A. 108; *National Trust Co. v. Fourth National Bank*, 91 Tenn. 336, 15 L. R. A. R. 710; *Demmon v. Boylston Bank*, 5 Cush. 194; *Camden National Bank v. Green*, 45 N. J. Eq. 546; *Van Wagoner v. Patterson Gaslight Co.*, 23 N. J. L. 283; *Aldrich v. Campbell*, 4 Gray, 284; Morse, Banks and Banking, sec. 337; *Stetson v. Exchange Bank*, 7 Gray, 425; *Armstrong v. Warner*, 49 Ohio St. 376, 17 L. R. A. 466; *St. Paul & M. Trust Co. v. Leck*, 57 Minn. 87; *Becker v. Northway*, 44 Minn. 61.

The bank has a general lien on all moneys and funds of a depositor in its possession, for the balance of the general account.

1 Morse, Banks and Banking, sec. 324; 1 Jones, Liens, sec. 241; *Wikel v. Garrison*, 82 Iowa, 453; *Ware v. Howley*, 68 Iowa, 633; *Rappleye v. Racine Feeder Co.*, 79 Iowa, 240, 7 L. R. A. 139.

It was the duty of the Citizens' National Bank to make the set-off, and if possible, obtain payment from Pearson, the principal, in order to protect, so far as possible, the surety on the note, Mosher.

*Laclede Bank v. Schuler*, 120 U. S. 511, 30 L. ed. 704; *Richards v. Osceola Bank*, 79 Iowa, 707; *Re Rea*, 82 Iowa, 231; *Masonic Savings Bank v. Bangs*, 84 Ky. 135.

DEEMER, J.—For ten years or more, prior to the seventh day of August, 1893, A. T. Pearson, under the name of the Exchange Bank of Angus, had been doing business with the Citizens' National Bank of Des Moines. About the time he established his business he borrowed one thousand dollars of the Citizens' Bank, and renewed the note given as evidence thereof, from time to time, until June 28, 1893, when he gave the note which the bank is now seeking to protect. Mosher was a surety on this note. Pearson put the money borrowed into the bank at Angus. He also made the national bank his correspondent at the city of Des Moines, and kept a deposit account with it, upon which he issued checks and drafts to his customers. On the seventh and ninth days of August, he had a general balance in his deposit account of one thousand forty-four dollars and fifty cents. On the seventh of August, he sold and issued to plaintiff, Thomas, a draft or check upon the Citizens' Bank for the sum of one thousand dollars, and on the same day sold and issued to plaintiff, Muir, a like check or draft for the sum of one hundred and ninety-five dollars. After

issuing these drafts, and on the same day, he made a general assignment for the benefit of his creditors. The Citizens Bank was informed of this assignment the day it was made, or the next day thereafter; and when appellants' drafts or checks were presented, which was on the ninth day of August, it refused to honor or pay them, claiming it was entitled to hold the balance in the deposit account as an offset to the note given it by Pearson and Mosher, which, as we have already said, was not then due. Pearson was insolvent at the time he issued the checks to appellants, and had been so for more than thirty days. When the Citizens' Bank learned of Pearson's assignment, it determined to set off the deposit account against the note, and for that reason refused to pay appellants' checks when presented.

It is argued by appellants that, under this state of facts, the appellee had no right to offset or appropriate the deposit account standing in the name of the Exchange Bank against the individual note of A. T. Pearson, for the reason that the debtor and depositor were not the same. There is no force in this contention, for we have seen that Pearson and the Exchange Bank were one and the same. The Exchange Bank was not incorporated. It was simply a name which Pearson adopted under which to do business. Whatever he owned belonged to the bank, and whatever the bank possessed was his. The difference was simply in name. The fact that Mosher signed the Pearson note as surety, if of any importance, is a stronger reason why the bank should insist on its right to the deposit account. He, as surety, had the right to demand of the national bank that it resort to the funds then in its hands belonging to Pearson. It is more than likely that, if the bank had neglected to enforce its rights to the fund, it would have released Mosher from his obligation.

Appellants further contend that, as the note was not due, the bank had no right or authority to offset the deposit as against it. That this is or has been the rule at law may be conceded; but such is not the rule in equity, and it may well be doubted whether under our statutes it is now the rule at law. But this question we need not determine, for it is almost universally held that, if the debtor be insolvent, a bank may offset as against a debt not due any sum which it may be owing to the debtor, unless of course the account which it owes has been pledged to some specific purpose, or is impressed with some trust. See Morse, Banks, section 329; *Scott v. Armstrong*, 146 U. S. 499 (13 Sup. Ct. Rep. 148); *Schuler v. Israel*, 120 U. S. 506 (7 Sup. Ct. Rep. 648); *North Chicago Rolling Mill Co. v. St. Louis Ore & Steel Co.*, 152 U. S. 596 (14 Sup. Ct. 710); *Davis v. Milburn*, 3 Iowa, 163; *Kentucky Flour Co. v. Merchants' National Bank* (Ky.) (13 S. W. Rep. 910); *Nashville Trust Co. v. Fourth National Bank* (Tenn.) (18 S. W. Rep. 822); *Bank v. Green* (N. J. Ch.) (17 Atl. Rep. 689); Morse, Banks (3d Ed.) section 337; *Trust Co. v. Leck* (Minn.) (58 N. W. Rep. 826.)

It is contended, however, that the issuance of the checks in suit was an equitable assignment to appellants, *pro tanto*, of the funds in the national bank, which gave to the payees thereof an immediate right of action against the bank, and that in such an action the payees have a superior right to the fund; and *Roberts v. Corbin*, 26 Iowa, 315 is cited. All that is held in that case is that the holder of checks secures thereby an equitable assignment to the funds of the drawer in the hands of the bank against which it is drawn, and that the holder may bring an action against the bank in his own name. It is also said that the rights of the drawee of the check are superior to those of an assignee for the benefit of the creditors of the drawer. It was not held that the holder of the

check had any greater rights than the drawer would have had as against the bank holding the funds, had no assignment been made; nor do we think such a rule ought to be established. All that the holder receives is an assignment or *pro tanto* assignment of the funds of the drawer, in the bank against which the check or draft is drawn. In this case the Citizens' Bank had no notice of the issuance of the checks until after it discovered the insolvency of Pearson. It then had the right, as we have seen, to use the deposit account as an offset to the amount due it on the note; and the holders of the drafts had no greater rights than Pearson would have had had he been attempting to collect the deposit. Our statutes expressly provide that an assignee of an open account has no greater rights than his assignor. The section referred to is as follows: "Open Account Assignable. An open account of sums of money due on contract may be assigned, and the assignee will have the right of action in his own name, but subject to the same defenses and counter-claims as the instrument mentioned in the preceding section, before notice of such assignment is given in writing by the assignee to the debtor." Code, 1873, section 2987. Section 2546 of the Code also provides: "In case of the assignment of a thing in action, the action by the assignee shall be without prejudice to any counter-claim, defense or cause of action, whether matured or not, if matured when plead, existing in favor of the defendant and against the assignor before notice of the assignment. But this section shall not apply to negotiable instruments transferred in good faith and upon valuable consideration before due." In the case of *Downing v. Gibson*, 53 Iowa, 517 (5 N. W. Rep. 699), we held in construing this section that the defendant in an action by the assignee of a negotiable promissory note transferred

VOL. 99 Ia—14

after due, may set up as a counter-claim or cause of action a note held by him against the assignor, which was acquired by him before notice of the transfer of his note by such assignor.    The cases of *Bank v. Robinson* (Ky.) (31 S. W. Rep. 136), and *Dawson v. Bank*, 5 Ark. 283, relied upon by appellants, are clearly distinguishable from the one at bar.    The latter case was one at law, and there was no showing that the depositor was insolvent.    Again, the decision is made to turn upon the statutes of the state of Arkansas, which expressly exclude such a set-off as is here pleaded. It does not appear whether the first case cited is made to turn upon a statute or not; but, if it be conceded that it was decided upon equitable principles, it seems to us that the ruling there made is contrary to the weight of authority, and we decline to follow it.    The supreme court of the United States in the case of *Bank v. Schuler*, 7 Sup. Ct. Rep. 644, has announced the correct rule as we understand it.

This disposes of all the questions argued by appellants' counsel, and we find that there is no reason for disturbing the judgment and decree of the district court.—AFFIRMED.